485 P.2d 1168

William D. CHAPMAN, individually; William D. Chapman and Jane Doe Chapman, his wife, Appellants,

v.

RANGER INSURANCE COMPANY, a corporation, Appellee.

No. I CA–CIV 1512.

Court of Appeals of Arizona, Division 1, Department B.

June 21, 1971.

Rehearing Denied July 22, 1971.

Review Denied Oct. 5, 1971.

George W. Oglesby, Phoenix, for appellants.

Lewis & Roca, by Michael J. LaVelle and John A Miller, Phoenix, for appellee.

JACOBSON, Presiding Judge.

This appeal requires the court to make a determination as to whether an airplane which was crashed in Mexico by a student pilot was covered under a policy of insurance.

The procedural setting of this suit arose out of a third party complaint filed by third party plaintiff-appellant William D. Chapman and his wife against third party defendant-appellee, Ranger Insurance Co. In the original action, the Michigan National Bank, a national banking association, sought a judgment against William D.

Chapman and William E. McKnight and their wives on a promissory note in the sum of $8,147, this note being secured by a chattel mortgage on a 1964 Cessna 172 airplane. Upon stipulation, judgment was entered in favor of the bank and against William D. Chapman, no service ever having been effected on the defendant McKnight. The matter proceeded to trial before a jury on the third party complaint. Following a verdict in Chapman's favor, the trial court granted Ranger's motion for a new trial. Upon retrial to the court, judgment was entered in favor of Ranger Insurance Company and Chapman has appealed.

In the latter part of 1966, third party plaintiff, William D. Chapman, became interested in forming a flying club to the end that several individuals might participate in the cost and expense of owning an airplane. Pursuant to this interest, he contacted a Chuck Wright, who was the manager of a small airfield located outside Phoenix, Arizona. Mr. Wright put Mr. Chapman in touch with a William McKnight and together they, Chapman and McKnight, agreed to purchase a 1964 Cessna 172 airplane from Mr. Wright. This airplane, together with the installment note and chattel mortgage executed by Chapman and McKnight for the purchase price of the airplane, provides the subject matter of the ensuing litigation.

The chattel mortgage required that the airplane be insured. Therefore, on July 19, 1967, a policy of insurance was obtained from third party defendant, Ranger Insurance Company, covering the subject aircraft.

Following the purchase of the airplane, Chapman and McKnight obtained two additional members for their club, including a Larry Fassler, a student pilot. These new members were duly included as named insureds on Ranger's policy of insurance. However, with the inclusion of Fassler, a student pilot, Ranger attached an additional rider to its policy. This rider provided:

"It is agreed that this policy does not apply and that no coverage is afforded to any insured while any aircraft insured under this policy is being operated by a Student Pilot unless such Student Pilot is under the direction of a qualified FAA Certified Flight Instructor who shall specifically have approved each flight undertaken by the student prior to takeoff."

In addition the policy contained the following provisions:

"This policy does not apply * * * to any insured * * * (c) who operates or permits the aircraft to be operated for any unlawful purpose. * * *"

A second provision provided:

"This policy does not apply * * * to any insured who operates or permits the aircraft to be operated: (a) in any manner which requires a special permit or waiver from the United States Federal Aviation Agency whether granted or not; * * * (d) in violation of any regulation pertaining to pilot certificates."

The Code of Federal Regulations (14 C.F.R. § 61.73(a) (1971)), provides that a student pilot may not act as a pilot in command of an aircraft that is carrying a passenger or that is on an international flight.

A fourth provision of the policy provided:

"This policy shall not apply * * * to loss due to * * * confiscation by duly constituted government or civil authority. * * *"

It was stipulated by the parties that the aircraft was flown from the United States to Mexico on or about May 24, 1967 by student pilot Larry Fassler, who had with him a non-licensed pilot-passenger named Jerry Lawrence. It was further stipulated that the plane was crashed in Mexico, that it had aboard contraband consisting of stolen typewriters which were being illegally brought into Mexico, and that the plane

had been confiscated by the Mexican government. The plane was never recovered.

Chapman presented evidence that written rules concerning the use of the airplane were adopted by the members of the flying club which provided that exclusive use of the plane was to be vested in one member per week and that at the particular time Fassler took the airplane to Mexico he had no right to do so under these rules. In addition, evidence was presented that Ranger Insurance Company had, by letter, informed Michigan National Bank that it was accepting liability to it under the terms of its policy, which information was subsequently passed on to Chapman's attorney. Chapman contended that as a result of this information he gave up efforts to obtain possession of the airplane in Mexico.

Chapman relies on two basic points on appeal:

(1) That the exclusions contained in the policy were not applicable to him so as to deny coverage or that the insurance company failed to prove the factual basis for applying the exclusions, and

(2) Ranger, by its conduct, and the subsequent reliance thereon by Chapman, waived its policy defenses.

■ Chapman's first argument is that the exclusions dealing with unlawful conduct and violation of FAA regulations and pilots' certificates by their terms exclude only coverage to the "insured" who engages in such forbidden conduct or to those "insured" who knowingly permitted the forbidden conduct. Chapman's argument is that while Fassler might be excluded from coverage, he (Chapman) should not be, having had no knowledge of Fassler's nefarious conduct. In support of this construction of the policy, Chapman points to the specific language of the student pilot rider which provides "[i]t is agreed that this *policy does not apply and that no coverage is afforded to any insured* while any aircraft * * * is being operated by a Student Pilot * * *."

We need not decide this particular issue, for we are of the opinion that there was sufficient evidence before the trial court that Fassler took his ill-destined flight into Mexico without the prior approval of an FAA Certified Flight Instructor and thus no coverage was afforded any insured under the policy for the accident which occurred there. FAA regulations specifically deny the right of student pilots to make international flights or to carry passengers. In order for an FAA Certified Flight Instructor to have specifically approved this flight he would have had to countermand these two specific regulations. Moreover, the evidence was clear that the local FAA office had no knowledge of the particular flight involved. While every FAA Certified Flight Instructor in Arizona was not called to testify that they had not authorized the particular flight in question, the secrecy which one would expect to surround the smuggling of illegal contraband into a foreign country, together with the other positive evidence in this case, was sufficient in our opinion to justify the trial court's conclusion that the accident occurred on a non-approved flight by a student pilot and therefore was excluded from coverage under the terms of the policy. *See,* Pacific Indemnity Company v. Kohlhase, 9 Ariz.App. 595, 455 P.2d 277 (1969).

■ Chapman next contends that even if Ranger had a valid defense for his policy, this defense was waived by its conduct. Admittedly, Ranger undertook to investigate and did investigate both the circumstances of the loss and the amount of the loss. However, under our statutes such an investigation cannot be considered as a waiver of the defense of non-coverage under the policy. A.R.S. § 20–1130 provides:

"Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:

* * * * * *

"3. Investigating any loss or claim under any policy or engaging in negotiations looking toward a possible settlement of any such loss or claim."

This leaves only the conduct of Ranger in informing the bank that it did not deny liability under its policy as any evidence of waiver. It is apparent that this communication made to the bank was some three or four months after Ranger had specifically denied liability to Chapman's attorney. Also, there is no evidence that as far as Chapman was concerned, that Ranger ever, in any way, communicated directly to him that any defenses were waived or that liability under the policy was accepted. Under the particular terms of this policy, we do not believe that Ranger's conduct was so inconsistent as to constitute a waiver of defenses, at least as far as Chapman is concerned. Ranger's liability to the bank under the policy was specifically provided by a "Breach of Warranty Endorsement" made a part of the policy issued. This endorsement provided that, "[a]s to the interest of the lienholder only, the insurance afforded by this policy shall not be invalidated by *any act or neglect of the insured.* * * *"

The endorsement is clear, however, that only the interest of the lienholder was protected for it also provided:

"Whenever the Company shall pay the lienholder any sum for loss or damage under this policy and *shall claim that, as to the Insured or Owner, no liability existed,* the Company shall, * * * be thereupon legally subrogated to all the rights of the lienholder against the Insured or Owner * * *."

In our opinion, there was nothing in Ranger's conduct inconsistent in affirming liability as to the lienholder while at the same time denying liability to its insured. Under such a policy condition we hold that the insured had no right to rely on representations made to its lienholder and that no waiver of defenses occurred.

Ranger, in its brief raises other procedural issues which, having determined that the trial court entered judgment in its favor on the merits, need not be discussed.

For the foregoing reasons, the judgment of the trial court is affirmed.

HAIRE and EUBANK, JJ., concur.