438 P.2d 311

Roger LINDUS, a minor child, by and
through his Guardian ad Litem,
Robert E. Tullar, Appellant,

v.

NORTHERN INSURANCE COMPANY OF
NEW YORK, a corporation, and the Trav-
elers Insurance Company, a corporation,
also known as the Travelers Indemnity
Company, Appellees.

No. 9129–PR.

Supreme Court of Arizona,
In Banc.

Feb. 28, 1968.

Rehearing Denied April 16, 1968.

Fennemore, Craig, Von Ammon, Mc-Clennen & Udall, by Calvin H. Udall, Phoenix, for appellant.

Spaid, Fish, Briney & Duffield, by William Spaid, Tucson, for appellee Northern Ins. Co.

Kramer, Roche, Burch, Streich & Cracchiolo, by Daniel Cracchiolo, Phoenix, for appellee Travelers Ins. Co.

BERNSTEIN, Justice.

On November 14, 1967 we denied a petition to review the Court of Appeals, Division Two, decision in Lindus v. Northern Insurance Co., 6 Ariz.App. 74, 429 P.2d 708. The petitioner, Roger Lindus, asked this court on November 22nd to reconsider its denial of the petition for review and to stay the mandate. However, no stay order was entered by us and on November 27th the Court of Appeals issued the mandate to the Superior Court of Pima County. Lindus then filed, on November 29th, a petition to recall the mandate. This court granted the petition and recalled the mandate on December 5th. At the same time we vacated the original denial of the peti-

tion for review and entered an order granting the petition for review.

Northern Insurance Company and Travelers Indemnity Company (hereinafter referred to respectively as Northern and Travelers), on December 11th moved to quash and vacate our order of December 5th. We refuse to vacate the order recalling the mandate for the reasons set out below.

■ Both Northern and Travelers contend that this court has no jurisdiction to recall a mandate once it has issued. It should be noted, however, that here the use of the term "jurisdiction" does not mean that we lack the power. Rather, "jurisdiction" in this sense is analogous to the self-imposed restrictions of the equity court when it decides whether to act or refuse to act in any particular case. By balancing the policy considerations in an extraordinary situation this court may choose to *exercise jurisdiction* and recall a mandate.

■ The propriety of recalling a mandate once it has issued has caused considerable confusion among the various courts. See e. g., Slappy v. Georgia Power Co., 109 Ga.App. 850, 137 S.E.2d 537; Southwestern Corp. v. City of Los Angeles, 38 Cal.2d 623, 241 P.2d 985. We believe, however, that the proper criterion to be considered in determining whether to recall a mandate was succinctly expressed by the Supreme Court of the United States in United States v. Ohio Power Co., 353 U.S. 98, 99, 77 S.Ct. 652, 653, 1 L.Ed.2d 683, where it is stated:

> " * * * the interest in finality of litigation must yield where the interests of justice would make unfair the strict application of our rules."

Faced with the same problem that we now have before us the United States Supreme Court in Gondeck v. Pan American World Airways, Inc., 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21, in order to prevent injustice, granted a second petition for rehearing three years after the mandate

had issued. See also Cahill v. New York, N. H. & H. R. Co., 351 U.S. 183, 76 S.Ct. 758, 100 L.Ed. 1075; Chapman v. St. Stephens Protestant Episcopal Church, 105 Fla. 683, 136 So. 238, 138 So. 630, 139 So. 188, 145 So. 757, 84 A.L.R. 566.

■ A decision to recall a mandate must of necessity include a balancing of competing interests. Where the interests of justice outweigh the interest in bringing litigation to an end the court should recall the mandate. Of course where there has been either fraud, imposition, or mistake of fact, the court can always recall a mandate to modify or correct its own judgment. Overson v. Martin, 90 Ariz. 151, 367 P.2d 203.

It would be absurd to argue that a court, empowered to correct errors in every other court in this state cannot correct its own. Ariz.Const. Art. 6, Sec. 5, A.R.S. To hold otherwise would create the astounding concept that mistakes made by the Supreme Court of Arizona are the only errors for which no relief is available.

■ Moreover, in the instant case both Northern and Travelers cannot claim that they have been prejudiced since they had notice of further proceedings pending in this cause. Lindus had filed a petition to stay the mandate five days before it was actually sent to the trial court. The fact that the petition was not brought to this court's attention until after the mandate had issued is no reason to deny Lindus an opportunity to have the merits of his claim determined. We therefore hold that the order recalling the mandate was proper under these particular facts.

■ We turn next to a discussion of the merits of this case. We must take the evidence found by the trial court in the light most favorable to support the trial court's findings. Appellees admit that all of the findings of or factual issues in the case were in favor of the plaintiff except the issue of notice which we discuss later. Roger Lindus, a twelve-year-old student at the Orme Ranch School, was

seriously injured in an accident which resulted when Richard Phillippi, another student, was pouring gasoline into the carburetor of an automobile. William Nelson, an eighteen-year-old resident student, switched on the ignition in an attempt to start the engine. The engine backfired and the gasoline can which Phillippi was holding burst into flames. Phillippi immediately threw the can away to avoid being injured, however the can struck and critically burned Lindus, who was walking in the area.

Lindus sued Nelson, the boy who had turned on the ignition, and recovered a judgment for $92,500. Both Northern and Travelers, Nelson's insurers, failed to defend the suit and later refused to make payment. In a subsequent suit for declaratory judgment brought by Lindus against the two insurance companies the defense of lack of notice was raised. Northern raised the defense in its answer, and Travelers in its answers to interrogatories. Travelers was not notified of the accident until seventeen months after its occurrence but before suit was brought. Northern was not given notice until two years after the accident, shortly after suit was filed against Nelson. The case was submitted to the trial court sitting without a jury and the court found for the defendant insurance companies for the reason that the insured had failed to notify his insurance companies of the accident as soon as practicable.

At the threshold Northern contends that its comprehensive homeowners policy does not cover this accident. The pertinent policy provisions follow:

" * * * the definition of 'premises' appearing in the Basic Policy is extended to include:

(1) *All premises where the Named Insured* or his spouse *maintains a residence and includes private approaches thereto* and *other premises and private approaches thereto* for use in connection with said residence * * *"

\* \* \* \* \* \*

"(3) *Premises in which an Insured is temporarily residing,* if not owned by an insured * * *"

\* \* \* \* \* \*

"SPECIAL EXCLUSIONS"

\* \* \* \* \* \*

"(b) Under coverages E and F, to the ownership, *maintenance, operation, use,* loading or unloading of (1) automobiles or midget automobiles *while away from the premises or the ways immediately adjoining* * * *" (Emphasis added.)

Northern argues that since the accident occurred 200 yards away from the building in which Nelson slept that it obviously happened "away from the premises or the ways immediately adjoining."

There is no question that the accident in this case arose out of either the "maintenance" or "use" of an automobile. The sole issue before us is whether the accident occurred on the "premises or ways immediately adjoining" as defined in the policy so as to make the insurance company liable.

When dealing with a comprehensive homeowners policy an important factor to realize is that the parties did not intend to buy or sell automobile liability insurance. The coverage of automobiles, therefore, is restricted to the "premises or ways immediately adjoining" as an added protection for the insured for any risk connected with an automobile when intimately connected with the premises.

 The word "residence" in this context means the dwelling or abode of the insured. To give it any other construction would be unreasonable in light of the obvious intentions of the parties to a homeowners policy. The trial judge found and the evidence and exhibits show that the accident happened in a compound surrounded by Orme Ranch School buildings. All the grounds, approaches, and roadways, including the area where the car was parked when the accident occurred

are "private" and thus are immediately adjoining the "ways" immediately adjoining the premises in which Nelson resided. We therefore hold that the homeowners policy issued by Northern covers this particular accident.

■ The remaining issue for our determination is whether the insured's two-year delay in notifying Northern of the accident and his delay of seventeen months in notifying Travelers, his automobile liability insurer, is a good defense when notice is made an express condition precedent to liability under the policies. We have held in the past that an insurance company is not relieved of its contractual liability because of the insured's failure to give notice unless it can show that it has been prejudiced thereby. Massachusetts Bonding and Insurance Co. v. Arizona Concrete Co., 47 Ariz. 420, 56 P.2d 188. However, in that case the policy did not include a specific forfeiture clause.

The California court, on the other hand, in dealing with a similar case has held that an insurance company cannot prevail on its defense of lack of notice unless they can show prejudice even where notice is made an express condition precedent in the policy. Joyce v. United Insurance Co. of America, 202 Cal.App.2d 654, 21 Cal. Rptr. 361. See also Campbell v. Allstate Insurance Co., 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155; Reed v. Pacific Indemnity Co., 101 Cal.App.2d 151, 225 P.2d 255; Day v. Hartford Accident and Indemnity Co., D.C., 223 F.Supp. 953; Keith v. Lutzweit, 106 Ohio App. 123, 153 N.E.2d 695; Powell v. Home Indemnity Co., 343 F.2d 856 (8th Cir.)

■ Moreover, the burden of proving prejudice is on the insurance company. Campbell v. Allstate Insurance Co., supra. The court in Campbell explained the reason for placing this burden on the insurance company as follows:

"Although it may be difficult for an insurer to prove prejudice in some situations, it ordinarily would be at least as difficult for the injured person to prove a lack of prejudice, which involves proof of a negative. The presumption would not be in keeping with the public policy of this state to provide compensation for those negligently injured in automobile accidents through no fault of their own [citations omitted], and we are of the view that a judicially created presumption of prejudice, whether conclusive or rebuttable, is unwarranted * *." 384 P.2d 157.

■ In the case at bar the trial court found that both Northern and Travelers had been prejudiced but the only fact relied on to reach that conclusion, as shown in the record, was the insured's delay in giving notice of the accident. The record indicates, however, that all of the investigative reports would have been made available to both insurers, and that Lindus was perfectly willing to aid them in any further investigation they wished to pursue. In this regard a quotation from the California court's opinion in Campbell v. Allstate Insurance Co., supra, is quite appropriate:

"Defendant had access to the police report and also knew the location of Hammer's automobile. This gave defendant sufficient opportunity to verify that there had been an accident. The facts indicate that plaintiffs were innocent of fault, that Hammer was negligent, and that defendant would have been liable on its policy even if Hammer had cooperated with it. The evidence is not sufficient to show prejudice * * *." 384 P.2d at 157.

We conclude therefore, that in the instant case Northern and Travelers failed to show *actual* prejudice.

■ Moreover, we cannot assume that an eighteen-year-old boy would know that he was an additional insured under a family motor vehicle liability policy; that the automobile involved, although not the family car, was covered by this policy; and that he might be liable for negligence when Phillippi threw the gasoline can which

injured Lindus. Under our holding in Carpenter v. Superior Court, 101 Ariz. 565, 422 P.2d 129, the burden is on the insurer to either show that an additional insured knew of the policy and its conditions, or that they made a reasonable effort to apprise the insured of the extent and conditions of the policy. In the instant case the insurance companies failed to prove this fact.

Finally Travelers contends that they are only liable if Nelson was negligent in switching on the ignition under these circumstances. Since a judgment was entered against Nelson on the basis of negligence Travelers cannot attack it at this time. Therefore, we hold that Travelers is liable on its policy.

The opinion of the Court of Appeals, Division Two, is vacated. Judgment of the trial court is reversed.

McFARLAND, C. J., and STRUCK-MEYER and LOCKWOOD, JJ., concur.

NOTE: Vice Chief Justice JESSE A. UDALL, having disqualified himself, did not participate in the determination of this matter.