37 F.3d 1504
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Darin BESSETT, Plaintiff-Appellant,
v.
CNA AMERICAN CASUALTY INS. CO., a foreign corporation,
Defendant-Appellee.
 No. 93-15665.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 6, 1994.*
Decided Oct. 13, 1994.
 
 1
 Before: PREGERSON, WIGGINS, Circuit Judges, and FONG,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Darin Bessett sought a declaration of his rights under a homeowner's policy held by his former employer, Elda Reyna. The district court granted summary judgment to defendant American Casualty, finding that three different exclusions in the policy precluded coverage. Bessett appeals, contending that the district court erred in failing to certify a question of law to the Arizona Supreme Court, and in interpreting the homeowner's policy to deny coverage. We affirm.
 
 I. Background
 
 4
 This case arises out of an accident that occurred on April 4, 1994, rendering Darin Bessett a paraplegic.
 
 
 5
 Darin Bessett and his father, John Bessett, worked for Amado Plumbing, a business owned by Elda Reyna. American Casualty provided the homeowner's policy at issue to Elda Reyna.
 
 
 6
 On the day of the accident, Darin and John Bessett were driving home from a plumbing job in a company truck owned by Ms. Reyna when a leaf spring in the truck's suspension broke, causing the truck to track improperly. The two men drove the truck back to the shop, and John Bessett began to repair the truck by jacking it up and removing the broken leaf spring. Darin Bessett then offered to assist his father in installing the replacement leaf spring, and to do so he sat under the rear of the truck. When John Bessett attempted to pry the leaf spring into position, the truck slipped off the jack and injured Darin Bessett.
 
 
 7
 Darin Bessett initially filed a claim for workers' compensation a week after the accident, but later withdrew it. A month later, Bessett filed a tort action against Elda Reyna and his father in Pima County Superior Court. In August 1991, Darin Bessett and the defendants in that state court action entered into a Damron agreement,[1] in which Elda Reyna and John Bessett stipulated to liability and assigned to Darin Bessett any rights they had against American Casualty in exchange for his promise not execute the judgment against them. After the parties signed the Damron agreement, the superior court entered judgment against Elda Reyna and John Bessett in the amount of $5,000,000.
 
 
 8
 Darin Bessett then filed this action in the Arizona Superior Court seeking a declaration that Ms. Reyna's homeowner's policy provided coverage for this accident.[2] American Casualty removed this case to the United States District Court for the District of Arizona based on diversity jurisdiction.
 
 
 9
 The district court granted summary judgment in favor of American Casualty, holding that three different exclusions in the policy precluded coverage for Darin Bessett's injuries. The court found it unnecessary to reach American Casualty's fourth argument.
 
 II. Discussion
 
 10
 On appeal, Darin Bessett contends that the district court erred when it denied his motion to certify the question of how to interpret the phrase "arising out of the maintenance of a motor vehicle" in a homeowner's insurance policy. In addition, Bessett argues that the district court erred when it granted summary judgment to the insurer, since none of the four exclusions advanced by American Casualty bar coverage for this accident. We discuss the two arguments in turn below.
 
 
 11
 A. Motion for certification.
 
 
 12
 Bessett asserts that the district court erred in denying his motion for certification, arguing that the interpretation of the clause "arising out of maintenance of a motor vehicle" in the context of a homeowner's policy is an issue of first impression under Arizona law. Bessett concedes that in Thomas v. Liberty Mutual Ins. Co., 842 P.2d 1335, 1338 (Ariz.App.1992), review denied, (Jan. 20, 1993), the Arizona Court of Appeals interpreted that very phrase in an automobile liability insurance policy. But Bessett contends that the holding in Thomas is not applicable to the interpretation of that language in a homeowner's policy, and thus argues that the issue he raises in his case warranted review by Arizona Supreme Court.
 
 
 13
 We review the denial of a motion for certification for abuse of discretion. Louie v. United States, 776 F.2d 819, 824 (9th Cir.1985). In the instant case, the district court found Thomas to be controlling. As the discussion below explains further, the district court was well within its discretion to do so.
 
 
 14
 B. Summary judgment motion.
 
 
 15
 Bessett next contends that the district court erred when it granted summary judgment to American Casualty. In its motion for summary judgment, American Casualty argued that four different policy exclusions precluded coverage in this case. We find that the first of those policy provisions excludes coverage, and thus find it unnecessary to reach the additional arguments.
 
 
 16
 Bessett's first argument is that under Arizona law, the repair of a broken leaf spring does not constitute "maintenance" as defined in a homeowner's policy exclusion, and therefore the district court erred when it interpreted the automobile maintenance exclusion clause in Ms. Reyna's policy to bar coverage as a matter of law.
 
 
 17
 We review the district court's grant of summary judgment de novo. Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir.1990). Viewing the evidence in the light most favorable to Bessett, the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant law. Mead Reinsurance v. Granite State Ins. Co., 873 F.2d 1185, 1187 (9th Cir.1988).
 
 
 18
 The homeowner's policy issued by American Casualty provides:
 
 Section II--Exclusion
 
 19
 1. [personal and medical liability coverage] do not apply to bodily injury or property damage:
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 e. arising out of:
 
 
 23
 (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trialers, owner or operated by or rented or loaned to an insured;
 
 
 24
 (Emphasis added.) Bessett contends that this policy exclusion does not apply to him because replacing a broken leaf spring constitutes "repair" and not "maintenance." In making this argument, Bessett attempts to distinguish Thomas, 842 P.2d 1335, the recent Arizona case which defined the word "maintenance" as applied in an automobile insurance policy. But we find that Thomas clearly ruled that the definition of the word "maintenance" in an insurance policy encompasses repairs. Moreover, Thomas buttressed this conclusion with similar rulings from several other states that have spoken on the issue.
 
 
 25
 In Thomas, the insured, Janet Kartak, gave her Liberty Mutual insurance policy number to her son, Jason, so that he could obtain Arizona registration for his car. Jason Kartak did not purchase his own automobile insurance. After Jason was in an accident, Liberty Mutual denied coverage under Janet Kartak's policy.
 
 
 26
 The plaintiff in Thomas argued that Liberty Mutual was obligated to cover Jason's automobile because of an exception to an exclusion in Janet Kartak's policy. Her policy excluded liability coverage for vehicles owned by other members of the family, except where the policyholder maintained or used a vehicle owned by a family member. The Thomas plaintiff argued that Janet's act of providing her son with the policy number constituted maintenance, and thus that Jason should be covered under that exception.
 
 
 27
 The Thomas court responded to this argument by first acknowledging that "the meaning of the term 'maintenance' in an automobile insurance policy has not yet been interpreted in Arizona case law." Thomas, 842 P.2d at 1338. The Thomas court also noted the rule, cited by Bessett, that any ambiguity in an insurance policy is construed against the insurer, and that this presumption in favor of the insured is especially strong where the ambiguity involves an exclusionary clause. Id., citing Security Ins. Co. v. Andersen, 763 P.2d 246, 248 (Ariz.1988). But the Thomas court found the word "maintenance" to be unambiguous, and thus found that an alternative principle of interpretation applied: a court should give an unambiguous term its ordinary meaning and effect. Id. citing Mid-Century Ins. Co. v. Duzykowski, 641 P.2d 1272, 1274 (Ariz.1982); Rodemich v. State Farm Mut. Auto. Ins. Co., 637 P.2d 748, 749 (Ariz.App.1981).
 
 
 28
 The Thomas court then announced its definition: "the ordinary meaning that the average person would give to the term 'maintenance,' as used in the Liberty Mutual policy, is an act done to keep or place a vehicle in a physical state of repair, good condition, or efficient operation." Id. at 1339 (emphasis added). In reaching that conclusion, the Thomas court referred to cases from several other states which also ruled that the word "maintenance" includes repairs in its definition, e.g., Morris v. American Liability & Surety Co., 185 A. 201 (Pa.1936); Truck Ins. Exchange v. Aetna Casualty & Surety Co., 538 P.2d 529, 532 (Wash.App.1975). The Thomas court then found that Janet Kartak's act of providing an insurance policy number to her son did not fit into its definition of maintenance, since her act did not affect the physical operation of Jason's vehicle. Thomas, 842 P.2d at 1340.
 
 
 29
 The definition of maintenance announced in Thomas is not confined to automobile insurance policies, as Bessett asserts. Other states have confronted the question of interpreting the word "maintenance" in the context of a homeowner's policy exclusion, and have found that its definition encompasses repairs, and thus excluded coverage. For example, in Hollis v. St. Paul Fire & Marine Ins., 416 S.E.2d 827 (Ga.App.1992), the insured argued that an attempt to start a car by pouring gasoline into the carburetor was an act of repair, and thus was not "maintenance" excluded by a clause with language identical to the one in the instant case. The Georgia Court of Appeals rejected that argument, and affirmed the grant of summary judgment to the insurer. See also Farmer's Fire Ins. Co. v. Kingsbury, 481 N.Y.S.2d 469 (N.Y.App.Div.1984) (removing tire from rim is "maintenance" within scope of homeowner's policy exclusion); Indiana Ins. Co. v. Winston, 377 So.2d 718 (Fla.App.1979) (detaching hood and installing air scoop falls within "maintenance" exclusion in homeowner's policy).
 
 
 30
 We find that under Thomas v. Liberty Mutual Ins. Co., the repair that John and Darin Bessett made to the Amado Plumbing truck was "maintenance," as defined by the policy exclusion, and therefore that American Casualty is excluded from covering the injury. The parties do not disagree materially as to the facts surrounding the accident. Thus since we find that the district court applied Arizona law correctly, we affirm the grant of summary judgment to American Casualty.
 
 
 31
 C. Request for attorney's fees.
 
 
 32
 American Casualty requests attorney's fees for this appeal, under Ariz.Rev.Stat. Sec. 12-341.01 (1992). An award of attorney's fees is discretionary, and "there is no presumption that the successful party is entitled to attorney's fees." Layne v. Transamerica Financial Services, 707 P.2d 963, 967 (Ariz.App.1985). We deny American Casualty's request in our discretion, because we believe that Bessett's claim was not frivolous.
 
 
 33
 III. Conclusion.
 
 
 34
 We affirm the district court's denial of Bessett's certification motion, and the court's grant of summary judgment for American Casualty because we find the district court correctly held that under Arizona law, recovery for an injury resulting from the repair of an automobile is barred by a homeowner's policy "maintenance" exclusion.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Harold M. Fong, United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See Damron v. Sledge, 460 P.2d 997 (Ariz.1969) (upholding the assignment to plaintiff of insured's claim against insurer)
 
 
 [2]
 Darin Bessett also filed a claim with Amado Plumbing's business automobile insurer, Cincinnati Insurance Company. Cincinnati settled this claim for the policy limit of $500,000